TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

---

| | | |
|---|---|---|
| OPINION | : | |
| | : | No. 96-1002 |
| of | : | |
| | : | January 10, 1997 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| ANTHONY M. SUMMERS | : | |
| Deputy Attorney General | : | |
| | : | |

---

THE CALIFORNIA TRANSPORTATION COMMISSION has requested an opinion on the following questions:

1.       Does the California Transportation Commission have the authority to amend its adopted 1995 project funding estimate to reflect bond funds made available by the voters' approval of the Seismic Retrofit Bond Act of 1996?

2.       If so, does the California Transportation Commission have the authority to amend its 1996 state transportation improvement plan to add projects that will be paid for by the funds included in an amended 1995 project funding estimate?

CONCLUSIONS

1.       The California Transportation Commission has the authority to amend its adopted 1995 project funding estimate to reflect bond funds made available by the voters' approval of the Seismic Retrofit Bond Act of 1996.

2.       The California Transportation Commission has the authority to amend its 1996 state transportation improvement plan to add projects that will be paid for by the funds included in an amended 1995 project funding estimate.

ANALYSIS

The California Transportation Commission ("Commission") is charged with a number of responsibilities relating to the formulation and evaluation of state policies and plans for transportation programs. (Gov. Code, §§ 14520 - 14534.) **Footnote No.1** In performing these functions, the Commission interacts closely with the Department of Transportation ("Department"). The Commission is responsible for evaluating the Department's budget (§ 14523), and the Department is required, in each odd-numbered year, to provide the Commission with a seven-year estimate of all state and federal funds reasonably expected to be available for projects to be included in the state transportation improvement plan ("STIP"). In estimating

revenues, the Department "shall assume that there will be no changes in existing statutes." (§ 14524, subd. (e).)

The Commission in turn is required in each odd-numbered year to adopt a seven-year estimate of state and federal funds reasonably expected to be available for the various program elements in the STIP. (§ 14525.) The STIP itself is a seven-year program which is adopted by the Commission in each even-numbered year and constitutes the Commission's statement of intent for the allocation of funds during the seven-year period. The STIP:

> ". . . shall include all major projects, as determined by the commission, to be funded from state transportation funds, including revenues from transportation bond acts allocated by the commission during those seven years, and shall be limited to intercity, commuter and urban rail capital improvements, flexible congestion relief, interregional road systems, and retrofit soundwalls." (§ 14529, subd. (b).)

In 1995, as required, the Commission adopted a project funding estimate, and in 1996 it adopted a STIP. In adopting its 1995 funding estimate, the Commission assumed that the cost of the seismic retrofitting program adopted after the 1994 Northridge earthquake would be charged to the state highway account. That retrofitting was included in the 1996 STIP.

At the general election in March of 1996, the voters approved Proposition 192, the Seismic Retrofit Bond Act of 1996 (§§ 8879-8879.16; "Act"). The Act provides $2 billion in bond funds for seismic retrofitting, of which $650 million is earmarked for retrofitting toll bridges. It also requires that the costs associated with the 1994 Northridge earthquake retrofitting program and the toll bridge retrofitting program be paid for solely out of bond funds, directing that the state highway fund be reimbursed for any expenditures relating to those two programs which were incurred in the 1994-1995 and 1995-1996 fiscal years. (§ 8879.3, subd. (a)(3).)

Accordingly, as a result of the voters' approval of the Act in 1996, an additional $2 billion has become available that was not included in the 1995 project funding estimate adopted by the Commission. In addition, the 1996 STIP does not currently include projects to be funded by the amounts "freed up" by the bond funds for the Department's retrofitting programs. We are asked whether the 1995 funding estimate may be amended by the Commission to include the Act's $2 billion and whether the Commission's STIP may be amended to add projects that will be paid for by the funds "freed up" by the Act. We conclude that the Commission has the authority to perform both duties.

1.      Amendment of the Funding Estimate

Long term funding estimates for transportation projects are, by definition, imprecise. The funding estimates prepared by the Commission are to identify funds "reasonably expected to be available to each county for each program element, as defined by Section 164 of the Streets and Highways Code." (§ 14525, subd. (a).) The Legislature has explicitly acknowledged the need for revising such estimates in Streets and Highways Code section 164, subdivision (a):

> "The Legislature, through the enactment of this section, intends to establish a 10-year state transportation funding plan. This plan is to be based on the best available estimate of state and federal funds and a statement of legislative priorities for the next 10 years. It is recognized that, in a changing environment such as California, periodic reviews and revisions will be necessary."

The biennial funding estimate of the Commission is one means of updating past predictions. Moreover, section 15525, subdivision (c) provides that the Commission may, following consultation with various agencies, "... amend the estimate ... to account for unexpected revenues or other unforeseen

various agencies, . . . amend the estimate . . . to account for unexpected revenues or other unforeseen circumstances." Since the Commission's funding estimate is based in part upon information supplied by the Department, and the Department must make its estimate assuming there will be no changes in existing statutes (§ 14524, subd. (e)), bond act revenues approved by the electorate after the Department has prepared its estimate will be "unexpected."

In adopting an amendment based upon "unexpected revenues or other unforeseen circumstances," we do not believe that the Commission is required to reexamine all of the assumptions that supported the original funding estimate (e.g., availability of federal funds, projected gasoline sales, and weight fees). Nothing in the statutory language or legislative history of section 15525 requires such a complete reexamination. **Footnote No. 2**

The Legislature has provided for a comprehensive funding estimate by the Commission every two years and has authorized amendment of that estimate to reflect "unexpected revenues or unforeseen circumstances." (§ 14525, subd. (c).) Here a single major revenue factor changed when the Act was approved by the voters. The Commission may amend its 1995 project funding estimate to reflect that change, and in so doing, it need not re-visit all of the factors underlying every assumption in the original estimate.

2.	Amendment of the STIP

Since the STIP is based upon the Commission's project funding estimate, it necessarily reflects the same uncertainties and assumptions discussed above, as is inevitable in any effort to plan ahead for a seven-year period. Changing conditions are bound to affect the STIP, and the Legislature has authorized the Commission to "amend the state transportation improvement program as it deems appropriate." (§ 14531.) Amending the STIP under the express terms of section 14531 would allow the Commission to add projects that will be paid for by the funds "freed up" by the adoption of the Act.

While the authorization contained in section 14531 appears to answer the second question completely, we have been asked to consider the effect of certain 1994 legislation upon the grant of authority contained in section 14531. In 1994 the Legislature enacted several statutes to deal with the seismic retrofitting program developed after the 1989 Loma Prieta earthquake. (Stats. 1994, ch. 1012, §§ 1-6.) An uncodified section (§ 7) provides:

> "The Legislature finds and declares that the timing and process for the adoption of the state transportation implementation program is specified in the statutes, specifically Section 14529 of the Government Code. The Department of Transportation, the California Transportation Commission, and regional transportation planning agencies shall not take any action to reprogram the state transportation improvement program until the next statutory cycle."

Does this uncodified provision refer only to the STIP adopted by the Commission in 1994, or does it apply to all future STIPs as well?

If this uncodified provision were intended to prohibit "reprogramming" **Footnote No. 3** of all future STIPs, it would in effect negate the language of section 14531 that allows amendments of a STIP. Yet the Legislature did not repeal section 14531. It is to be assumed that in enacting a statute, the Legislature is aware of existing, related laws and intends to maintain a consistent body of statutes. (*Hays* v. *Wood* (1979) 25 Cal.3d 772, 784.) In the absence of express contrary terms, it will be presumed that the Legislature did not intend by a later act to repeal a former one if by a fair and reasonable construction effect can be given to both. (*Hammond* v. *McDonald* (1939) 32 Cal.App.2d 187; 65 Ops.Cal.Atty.Gen. 512, 513, fn. 3 (1982).) In *Hays* v. *Wood*, *supra*, 25 Cal.3d at 784, the court summarized:

> "Thus there is a presumption against repeals by implication; they will occur

only where the two acts are so inconsistent that there is no possibility of concurrent operation, or where the later provision gives undebatable evidence of an intent to supersede the earlier; the courts are bound to maintain the integrity of both statutes if they may stand together."

Here, section 14531 may be reconciled with the uncodified language at issue by reading the latter as applying only to the 1994 STIP. This interpretation is supported by the fact that when Legislature submitted the Act to the voters in 1996, it explained the terms of the Act as follows:

"(a) Any funds that become available to the California Transportation Commission for reprogramming, as a result of the adoption by the voters of the Seismic Retrofit Bond Act of 1996, shall not be programmed by the commission for any mass transit guideways in the County of Los Angeles until there is a public hearing on that programming . . . ."

"(b) Nothing in this section shall be interpreted to prohibit any programming of transportation funds for highway purposes." (Stats. 1995, ch. 310, § 13.5.)

Thus in 1995 the Legislature contemplated the possibility that the Commission would "reprogram" funds "as a result of the adoption by the voters of the Seismic Retrofit Bond Act of 1996." This indicates that the prohibition in the 1994 legislation was intended only to apply to the 1994 STIP, and not to prohibit all future amendments or reprogramming.

Finally, we note that the 1994 uncodified provision was adopted in connection with the Legislature's authorization to "contract out" seismic retrofitting work. The Legislature determined that such authorization should not provide a basis for "reprogramming" the 1994 STIP; on the other hand, it contemplated in 1995 that approval of the $2 billion Act by the electorate would provide such a basis. In neither case did the Legislature alter the basic statutory authority of the Commission to amend a STIP.

We conclude that the Commission has the authority to amend both its 1995 project funding estimate and its 1996 STIP to reflect bond funds made available by the voters' adoption of the Act.

---

**Footnote No. 1**
All referenced hereafter to the Government Code are by section number only.
**Footnote No. 2**
In interpreting the governing statutes, we are quided by well-established principles of statutory construction. "When interpreting a stature our primary task is to determine the Legislature's intent. [Citation.]" (*Freedom Newspapers, Inc.* v. *Orange County Employees Retirement System* (1993) 6 Cal.4th 821, 826.) "To determine the intent of legislation, we first consult the words themselves, giving them their usual and ordinary meaning. [Citation.]" (DaFonte v. Up-Right, Inc. (1992) 2 Cal.4th 593, 601) When "statutory language is . . . clear and umambiquous there is no need for construction, and the courts should not indulge in it." (Rojo v. Kliger (1990) 52 Cal.3rd 65, 73.)
**Footnote No. 3** While the term "reprogram" is not defined, we may assume for our purposes that it means the addition or deletion of projects listed in the STIP. The term may also mean the Changing of project delivery due dates.